UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAWN J.,[1] | ) |
| | ) No. 19 CV 6903 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| | ) |
| | ) July 9, 2021 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Dawn J. applied for disability insurance benefits ("DIB") claiming that she is disabled by a combination of symptoms stemming from fibromyalgia, obesity, depression, and PTSD. In this lawsuit Dawn seeks review of the Commissioner of Social Security's decision denying her DIB application. *See* 28 U.S.C. § 405(g). Before the court is Dawn's motion for summary judgment. For the following reasons, Dawn's motion is granted, and the case is remanded for further proceedings:

**Procedural History**

Dawn applied for DIB in July 2018 claiming a December 2017 disability onset date. (Administrative Record ("A.R.") 176.) After her application was denied initially and upon reconsideration, (id. at 86, 104), Dawn sought and was granted a

---

[1] Pursuant to Internal Operating Procedure 22, the court will use only the claimant's first name and last initial throughout this opinion to protect her privacy to the extent possible.

hearing before an administrative law judge ("ALJ"). Following her May 2019 hearing, at which Dawn appeared with her attorney and a vocational expert ("VE"), (id. at 31-69), the ALJ issued a decision concluding that Dawn is not disabled, (id. at 15-26). When the Appeals Council denied review, (id. at 1-3), the ALJ's decision became the final decision of the Commissioner, *see Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020). Dawn then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. (R. 5); *see also* 28 U.S.C. § 636(c).

**The ALJ's Decision**

The ALJ followed the standard five-step sequence in evaluating Dawn's DIB application. *See* 20 C.F.R. § 404.1520(a). At steps one and two, the ALJ determined that Dawn had not engaged in substantial gainful activity since her alleged disability onset date and that she suffers from severe impairments including fibromyalgia, obesity, depressive disorder, PTSD, and substance use disorder in remission. (A.R. 17-18.) At step three the ALJ determined that none of Dawn's impairments is of listings-level severity. The ALJ assessed Dawn as having moderate limitations in all paragraph B criteria. (Id. at 19.)

The ALJ then determined that Dawn has a residual functional capacity ("RFC") to perform medium work with many additional limitations, including, as relevant here, several accommodations for Dawn's mental health impairments. Those accommodations include the following: (1) a restriction to routine, simple, repetitive tasks but not at a production-rate pace to account for Dawn's moderate limitations in understanding, remembering, and carrying out instructions; (2) a

2

restriction to simple work-related decisions to account for her limitations in using judgment; (3) a limitation to only frequent interactions with supervisors and co-workers and occasional interactions with the public (presumably to accommodate Dawn's moderate limitations in interacting with others, although the ALJ did not so specify); and (4) a restriction to making only simple work-related decisions to accommodate her limitation in dealing with changing work settings. (Id.)

In explaining the assigned RFC restrictions, the ALJ found that Dawn falls within the moderate range of restrictions with respect to all paragraph B criteria, relying almost entirely on the findings of the consultative examining psychologist, Kenneth Heinrichs, Psy.D. With respect to understanding, remembering, and applying information, the ALJ noted Dr. Heinrichs's finding that Dawn's long-term memory was intact but her auditory memory was impaired, and concluded that those findings indicate no more than a moderate impairment. (Id. at 22.) As for interacting with others, the ALJ cited Dr. Heinrichs's finding that Dawn's speech and language functioning are normal, treatment providers' observations that she is often depressed and tearful, and Dawn's active participation in group mental health therapy to conclude that her limitations are only moderate. (Id.) In evaluating Dawn's ability to maintain concentration, persistence, or pace, the ALJ acknowledged Dr. Heinrichs's determination that she is impaired in this domain and stated (without elaborating) that his findings with respect to her ability to repeat digits and perform calculations suggest no more than a moderate limitation. (Id.) Finally, with respect to adapting and managing herself, the ALJ concluded

3

that Dawn's limitations are moderate because Dr. Heinrichs and other providers described her judgment and insight as normal. (Id.) The ALJ noted that he found Dr. Heinrichs's evaluation to be "persuasive in that it is supportive of no more than moderate limitations in any 'paragraph B' area of mental functioning." (Id. at 24.)

The ALJ also considered various RFC opinions submitted in conjunction with Dawn's DIB application. The ALJ found "most persuasive" the opinions of the non-examining consulting psychologists and that of Dawn's treating psychiatrist, Dr. Paul Hung. (Id. at 23.) The ALJ essentially adopted the RFC findings of the consulting psychologists, noting that their application of the paragraph B criteria "is consistent with the findings herein." (Id.) As for Dr. Hung's opinion, the ALJ acknowledged Dawn's testimony that she did not share with Dr. Hung issues that she felt comfortable discussing with her other therapists. Nonetheless, the ALJ found Dr. Hung's opinions with respect to her mental health limitations "most persuasive," explaining that Dawn saw him every six weeks for a year and that his opinions were consistent with medical records, "including the claimant's mental status examinations within normal limits." (Id. at 23-24.)

The ALJ found unpersuasive the opinions of Dawn's treating psychologist, Jessica Wertz, Psy.D., and her psychology extern, Madeline Johnson, that Dawn has marked limitations in several paragraph B criteria. (Id. at 24.) The ALJ rejected their opinions for two reasons. (Id.) First, he found them to be inconsistent with Dr. Hung's opinion. (Id.) Second, he reasoned that the psychologists' findings were "inconsistent with [Dawn's] performance at the hearing in which she

4

demonstrated no inability to concentrate, or focus on the questions asked of her." (Id.)

## Analysis

Dawn argues that the ALJ erred in weighing the medical opinion evidence and failed to account for the cumulative impact of her impairments in assessing her RFC.[2] Dawn also argues that the ALJ improperly "played doctor" by substituting his judgment for that of Dawn's treatment providers when assessing her RFC and weighing the medical opinions. In reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). Although this standard of review is deferential and does not permit the court to second-guess the ALJ's weighing of the evidence, the court will reverse where the ALJ's decision rests on "serious factual mistakes or omissions" or where the evidence the ALJ cites does not support his conclusion. *See Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014).

---

[2] Dawn also argues that the ALJ erred in discounting a decision of the VA finding her to be 100% disabled in December 2016. The applicable SSA regulations direct ALJs not to analyze VA decisions, but rather to consider the evidence underlying those decisions. *See* 20 C.F.R. § 404.1504. Dawn admits that the records predating the VA decision were not available to the ALJ, and her argument that the ALJ should have sought those records is precluded by the fact that her attorney told the ALJ that the record was complete. (A.R. 68.)

5

## A. Medical Opinion Evaluation

Because the ALJ's weighing of the medical opinion evidence necessarily impacted his assessment of Dawn's RFC, the court begins with Dawn's challenge of the ALJ's opinion evaluation. Dawn argues that the ALJ impermissibly "played doctor" when assessing the medical opinions rather than applying the required factors set out in 20 C.F.R. § 404.1520c, and asserts that he "simply picked his way through the various opinions, deciding which ones were most in sync with his own." (R. 12, Pl.'s Mem. at 14.) The applicable regulations direct an ALJ to weigh medical opinions according to factors including supportability, consistency, the length and nature of the treatment or examining relationship with the claimant, the source's specialization, and the source's familiarity with the medical record, with the first two factors being the most important. 20 C.F.R. § 404.1520c(a), (c).

The ALJ cited none of the required factors when accepting as "most persuasive" the opinions of the non-examining consulting psychologists with respect to Dawn's mental functioning. (A.R. 23.) Nor did the ALJ provide any other explanation for why he considered those opinions "most persuasive," besides summarily stating that they are "consistent with the findings herein." (Id.) Elevating the opinion of a non-examining physician above that of an examining or treating physician is an "unusual step" that requires "a good explanation." *Paul v. Berryhill*, 760 Fed. Appx. 460, 464 (7th Cir. 2019) (citation omitted). Thus, before prioritizing the consulting psychologists' opinions above those of Dawn's treating psychologists, the ALJ was required to consider that "an examining doctor may

6

have more insights than a doctor reviewing evidence in a folder." *See Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (citing 20 C.F.R. § 404.1520c(c)(3)(v)). The ALJ did not do so here.

The ALJ was also required to analyze whether record evidence that came after the consulting psychologists rendered their opinions makes those opinions less persuasive. *See* 20 C.F.R. § 404.1520c(c)(5). Here the ALJ failed to acknowledge that the consulting psychologists' opinions were rendered before most of Dawn's treatment with Dr. Wertz and Johnson, who opined that she has marked limitations in several relevant domains. Based on that timing, there is no way to know how the consulting psychologists' assessment of the evidence might have changed had they had access to the treating psychologists' records. Given the ALJ's failure to engage with the required factors or provide more than a summary statement with respect to why he found the consulting psychologists' opinions "most persuasive," the court is left with the impression that the ALJ prioritized these opinions simply because they matched the ALJ's RFC assessment. That is impermissible. *See Kelly v. Colvin*, No. 12 CV 5580, 2014 WL 4388546, at *6 (N.D. Ill. Sept. 3, 2014) (noting that accepting only parts of treating physician's opinions that are "consistent with her assessed RFC" smacks of "meaningless" and "boilerplate" language often criticized in credibility context).

With respect to the opinions of Dawn's treating psychologists, Dr. Wertz and Johnson, the ALJ characterized them as having "no persuasiveness," again without engaging with the relevant factors. The only explanation the ALJ gave for

7

dismissing their opinions out of hand is that their finding of marked limitations "is inconsistent with Dr. Hung's opinion and inconsistent with [Dawn's] performance at the hearing in which she demonstrated no inability to concentrate, or focus on the questions asked of her." (A.R. 24.) This explanation is problematic for two reasons. First, the ALJ acknowledged elsewhere in his opinion that Dawn was uncomfortable discussing certain therapeutic topics with Dr. Hung (the psychiatrist who prescribed her medications) and worked on certain issues only with Dr. Wertz and Johnson. Nevertheless, the ALJ failed to consider how Dawn's partial disclosures to Dr. Hung may have influenced his view of the severity of her symptoms as compared to the psychologists, with whom Dawn was fully forthcoming.

Second, the ALJ seems to have analyzed Dawn's hearing "performance" based on how her behavior contrasted with his view of how a person with marked concentration and attention problems would respond to questioning. But even assuming his observation of Dawn's attentiveness during the 57-minute hearing was accurate, given the record evidence and consistent findings that Dawn's attention and concentration are impaired, his interpretation of her hearing behavior does not amount to substantial evidence to support the rejection of her treating psychologists' opinions. *See Jose R. v. Saul*, No. 19 CV 1882, 2021 WL 1812886, at *9 (N.D. Ill. May 5, 2021) (finding ALJ's observation that claimant concentrated for 58-minute hearing insufficient to demonstrate capable of sustained concentration). The ALJ was not entitled to "substitut[e] his personal observations for the

8

considered judgments of medical professionals." *See Turner v. Astrue*, 390 Fed. Appx. 581, 584 (7th Cir. 2010). The ALJ's errors in evaluating the medical opinions require a remand.

**B.     RFC Assessment**

In challenging the RFC assessment, Dawn first argues that the ALJ failed to consider the combined impact of her severe and nonsevere impairments. Specifically, Dawn asserts that the ALJ failed to consider the impact that her fibromyalgia-related fatigue would have on her ability to perform medium work, especially when exacerbated by her mental health problems, and offered no insight into how obesity played into the RFC assessment. But the ALJ did address the impact of each of these conditions on Dawn's RFC and explained why they do not require additional restrictions. The ALJ noted that Dawn testified that her fibromyalgia-related fatigue only required her to rest a couple of days a month and cited evidence that "most if not all" of her fibromyalgia-related complaints resolved when she attended physical therapy. (A.R. 20-21.) The ALJ expressly noted that the combination of Dawn's fibromyalgia and obesity caused physical restrictions but assigned a reduced range of work with postural limitations to address such impact. (Id. at 21.) Dawn has not pointed to any evidence that her obesity or fibromyalgia restricts her beyond the limits of the assigned RFC. *See Rennaker v. Saul*, 820 Fed. Appx. 474, 481 (7th Cir. 2020) (discussing claimant's obligation to demonstrate how obesity hampers ability to work). Accordingly, she fails to show that the ALJ did not adequately address the combined impact of her impairments.

Dawn's remaining challenges have more traction. First, Dawn argues that the ALJ inadequately supported his assessment of only moderate limitations with respect to each of the paragraph B criteria, especially considering her psychologists' opinions that she has marked limitations in the areas of interacting with others and concentration. (See A.R. 1161-62.) As explained above the ALJ did not adequately explain why he rejected Dr. Wertz's and Johnson's opinions. If on remand the ALJ gives their opinions more weight than before, he will need to reassess Dawn's RFC restrictions with respect to these criteria.

The court also notes that the ALJ failed to explain how he accounted for her moderate limitations in concentration, persistence, or pace in the RFC restrictions. The ALJ limited Dawn to "simple, routine, and repetitive tasks but not at a production rate pace," but he expressly tied those restrictions to Dawn's limitations in understanding, remembering, and carrying out instructions, not to her limitations in maintaining concentration and attention for extended periods. (Id. at 19.) The Seventh Circuit has made clear that in most cases a restriction to simple, routine, or repetitive work does not accommodate moderate limits in concentration or pace. *See, e.g., Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018). On remand the ALJ must reassess Dawn's level of restrictions in interacting with others and concentration, persistence, or pace, and explain how the RFC accounts for those limitations.

Finally, the ALJ improperly omitted from his analysis aspects of medical opinions he otherwise found persuasive but which conflict with the assigned RFC.[3] *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability."). In particular, although the ALJ found Dr. Hung's RFC opinion to be "most persuasive," he did not grapple with Dr. Hung's assessment that Dawn would be off-task for 15% of the day and absent as many as two days per month because of her symptoms. (See A.R. 1261.) The ALJ's failure to account for this limitation is not harmless, because the VE testified that the maximum acceptable off-task time is 15% of the workday and that an employer will not tolerate more than one absence per month. (Id. at 65.) Because the ALJ ignored Dr. Hung's assessment of Dawn's likely off-task time and absenteeism, the court has no way of knowing whether or how he factored them into the RFC.

This problem is compounded by the ALJ's mischaracterization of Dr. Hung's opinion. According to the ALJ, Dr. Hung opined that Dawn's "impairments would not preclude her ability to perform full-time competitive work." (Id. at 24.) But Dr. Hung's opinion here was equivocal—he stated that whether she can work is a "difficult question," which turns in part on whether Dawn's having to interact with others can be "planned around." (Id. at 1262.) The ALJ's misstatement of

---

[3] Although Dawn presented this latter aspect of her argument in the context of her challenge to the ALJ's treatment of the medical opinions, it is clear that she is challenging the ALJ's failure to fully incorporate these opinions into the RFC, so the court addresses her arguments here.

Dr. Hung's opinion in this respect reinforces the need to have the ALJ reassess on remand how Dr. Hung's opinion meshes with the assigned RFC.

## Conclusion

For the foregoing reasons, Dawn's motion for summary judgment is granted, and the case is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**